The Honorable. The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced, and the times will be as allotted to counsel. The first case today is United States v. Ryan Mumme, appeal number 19-1983. Mary Davis Good morning. May it please the Court, I'm Mary Davis, and I represent the appellant, Ryan Mumme. The issue I would like to address this morning is whether Mr. Mumme's consent to the seizure of his computer was voluntary. As noted in our opening brief, the burden of proving voluntariness is on the government. Moreover, we submit that the decision of the District Court was clearly erroneous based on the facts. There are three factors that the Court is to consider when looking at a consent issue, and that is whether the individual had knowledge of his right to refuse consent, any possible vulnerable subjective state of the consenting party, and whether there are inherently coercive tactics other than in nature of the questioning or the environment in which the questioning took place. Here, obviously, Mr. Mumme knew he had the right to refuse consent because he did so early on and pretty much throughout the conversation with the officers. But when Mr. Mumme said, I want to call an attorney, can I go into the house to make a call, the officer refused to go into the house to call an attorney. Immediately thereafter, I would say less than a minute later, that is when Mr. Mumme consented to the seizure. The officers accompanied him into the house, and they seized his computer. We submit that this, the failure of not allowing Mr. Mumme to use the phone to call his attorney was what led to him consenting to the seizure, and that this was not a voluntary consent. The District Court found it was not coercive to not let Mr. Mumme in to make the call because he could have used a cell phone. But there is absolutely nothing in the record to indicate that anyone had a cell phone that Mr. Mumme could have used. In addition, there are a couple of cases we cited in our brief, Milo and Illinois v. McArthur from the Supreme Court, where they noted that the fact that the suspect was able to go in and out of the house with an officer or the individual, the suspect was being questioned while an attorney was listening in and the person had the opportunity to talk with his attorney. This shows that in this case, it was not necessary for Mr. Mumme to be kept out of his home to use the telephone. One way to read the record, you tell me if this is a permissible way to read it, is that they are worried about him going in alone to the house because he might destroy the evidence. So, it's clear to him that they could go in and just take the electronics, but if they don't want them to do that, then they need to work out something which will involve either him not going in the house on his own and waiting or him going in himself and handing it to an attorney to accompany him into the house so he could use the phone to call an attorney. Excuse me, but go ahead, Judge Barron, then I have questions. I see that that's a possibility. What I'm just saying is if one of the options that they were saying to him is all of this is conditional, we could just go in and take the electronics, then I don't really understand what the problem is, unless you're saying that was not offered to him as an option. It was offered to him as an option if he consented to it. Yes, if he consented to the seizure, they can go and take it. I thought there was a statement that says we could seize your house or the electronics. That's all I thought said without saying I need a warrant to do that because wouldn't they have probable cause to go in because of the risk that they could have kept the house. They could have kept Mr. Mummy and his family or anyone else from going into the house while they got a warrant to seize the computer. That was an option, but I don't believe they could have gone in to just seize the computer because clearly, it's my reading of the record and my reading of the affidavit by the officer is that when they first went to Mr. Mummy's home, they did not have probable cause to get a warrant to seize the computer. If you look at the search warrant, there's nothing in there, no incriminating statements regarding Mr. Mummy other than he sent $30 to someone at one point in time. Ms. Davis, you did raise the lack of probable cause argument in the district court. The district judge ruled against you and found that the officers had probable cause at least as of the time of the conversation with him that you are relying on. You have not appealed to that determination. We take it as a fact that they had probable cause or they reasonably believed they had probable cause at that point when they said, the option for us is we go get a warrant. And given they had probable cause, there's a lot of case law, including from our circuit, U.S. versus Vasquez, U.S. versus Lee, U.S. versus Miller, that says consent is not vitiated when the officers say that the alternative is they'll go get a warrant. That's correct. That's very true. But my point is in this instance, in this case, that without even looking at the warrant, putting that aside because that was not, I don't believe, I don't believe that was raised below that there was no probable cause. Thank you. I believe the district court judge did find that, but that was not raised in the motion to suppress. Okay. Then what precisely is the argument of involuntariness if there's nothing wrong with the officers saying, look, the alternative to your consent is we just freeze this and we go get a warrant? That's correct. I think the important factor is that Mr. Mummey wanted to call an attorney and it was only when he was refused that did he say, okay, just go ahead and take it. He wasn't refused the opportunity to get a lawyer. He just wasn't Are you saying that when somebody says I want to make a call that it's incumbent on the police officers to make all his options for making that happen clear to him? I believe it is. Yes, I do. The district court judge said, well, he could have used a cell phone. No one knew if anyone had a cell phone. No one knows that that was an option. And the burden is not on Mr. Mummey to establish the facts. The burden was on the government and the government didn't produce any evidence whatsoever that this was an option for Mr. Mummey. If I can't go in the house, how can I get a lawyer then? No, he did not. He was just refused entry into the house to call a lawyer. And immediately after that, that's when he consented. What would be wrong with saying that the rule is that if the lawyer, they need to make that known? Because if known, maybe they would have made an option for him to make an arrangement to make a call other than going into the house, given they had a very reasonable reason to be worried about him going into the house to do it. Right. But again, I go back to my original point that they could have accompanied him into the house. There was nothing stopping them from going into the house with him so he could make his call. Oh, yes, there was. There was. They thought that the wisest course was to go get a warrant. And how can that, under those circumstances, render your client's consent involuntary? You seem to be assuming that the police have to offer cell phones to people when they say, no, you can't go into the house. I think that that should be something that should have been presented, an option presented to Mr. Mummy. And the other point I wanted to bring out, not just the fact that he wasn't given a phone to call, but the fact that his father, it's obvious he was very close, had a close relationship with his father. His father was told not to hinder on two occasions. And his father, Officer Tupper agreed during the motions hearing that Mr. Mummy's father was restricted. He was not allowed to go over towards Tupper and Ryan. And I think that this added to the coercive nature of the environment during the questioning. Okay, so you're making two points. One is about the father not being there to help his adult son make a voluntary decision. And the other is the cops should have given him a cell phone when they said, no, we're not going to let you go into the Mr. Mummy was I think at the time, 46 years old, does not mean that he did not feel overwhelmed and afraid. In fact, when the officers testified that he was very scared. Finish your sentence. And the officer testified that Mr. Mummy was very scared. And the officer testified that the father's movements were restricted. Okay. Thank you. Thank you. If you could mute your device, please, Attorney Davis and Attorney Block, if you could unmute your device. Good morning. May it please the court, Benjamin Block on behalf of the United States. I'll pick up this discussion about the potential obligation of law enforcement to provide a cell phone because Judge Lynch anticipated my argument entirely, which is that Mr. Mummy's argument Mr. Block, I did not make your argument. I asked some questions. Could you replay it, please? Absolutely. Your question touched on an argument that I wish to make, which is that Mr. Mummy's argument is based on a flawed assumption that law enforcement had some obligation to assist Mr. Mummy in making a phone call at the time that they secured his home. They did not. There was no Sixth Amendment right to counsel at that point in the investigation. Mr. Mummy had not been charged with any crime. There was no Fifth Amendment right to counsel. Mr. Mummy was not in custody, and he was not even being interrogated at the time of the consent. And even if this was a situation in which there was questioning, an invocation of counsel in the all other investigative steps. So the issue here is whether the police had an affirmative obligation to assist Mr. Mummy in reaching counsel, and there's simply no basis for that in the law. Instead, they presented... I just need to be, I think, apprised of what the case law is in this that they had probable cause at the time of the conversation to seize the computer. Yes. That's how you think we should be taking as a baseline, correct? Correct. Yeah. Now, as I understand it, the officers were under the impression that they still needed a warrant to search the computer, independent of the right to seize it, or is that wrong or right? Um, they needed a warrant both to search the computer and they needed a warrant at that point to enter the home in order to seize the computers because Mr. Mummy to that point had declined to consent to the seizure. Okay. So your view, even though they had probable cause, and even though they were worried about its possible destruction, they did not have authority at that point to go in to get the computer. No, their only authority at that point was to prevent the destruction of the evidence, and that's why they had the lawful right to secure the home. And if you look at the conversation on page 59 of the joint appendix between the officers and Mr. Mummy, they say, they begin by saying, we can either, we can seize your house, and he's concerned about that, and then they clarify, no, we can secure your house while we go get a warrant. And I think that was a correct understanding of the law on the police officer's part, that they couldn't enter the home without his consent, but they could secure the home to prevent anyone from entering it in order to preserve the evidence. And that comes from the that the broader right of law enforcement in this situation is to completely secure the home, and the fact that in MacArthur, the officers accompanied the defendant in to make a phone call, the Supreme Court refers to that as the lesser being within the greater, and the greater right was to secure the entire home. So law enforcement here isn't obligated to use least restrictive means to preserve the evidence. They felt that the appropriate thing was to secure the home in the absence of consent to seize the evidence. And so the only relevance of this question of Mr. Mummy's request to make a phone call, which I would note, he didn't even specifically say, I wish to call a lawyer. He just said, can I go into the house to make a call? But assuming for purposes of argument that his intention was to call a lawyer. I take it, did MacArthur address anything relating to voluntariness of a consent that occurs in that circumstance? No, that was purely a seizure. Here's the puzzle. If they had seized him and then asked for his consent, we'd question whether the consent was correct. If he were in custody or restricted, yes. Now we've seized your house and say you can't go in it. And yet we're supposed to think that not with saying that's happened to him, his consent is voluntary. What's your best case for saying that after they've told you're going to be kept out of your house, your decision to give up an item in the house as a price of entry into it is a consensual act? Five minutes remaining. Thank you. I would point the court to the Twomey decision and Perez-Montanez, both from the first circuit and cited in our brief, that when law enforcement describes two valid options. But in either of those cases, was the person who's consenting being told that one of the options was you're going to be kept out of your house for maybe a night? I'm not sure, but if it's lawful under MacArthur to do so, then it's not. It's lawful to seize the person. Let me just finish this line of questioning. It's perfectly lawful to seize a person. And yet when you supposedly consent when seized, we don't treat it as a voluntary consent. I guess I'm asking, what is the logic of saying when we say we're going to seize your house, unless you consent to give us something in it, that's also consensual? I think law enforcement has the right to preserve evidence. And if that comes at some inconvenience to the defendant, then the defendant is allowed to choose between his own inconvenience and law enforcement's right to preserve evidence for an investigation. And so here, Mr. Mummey made a choice between two lawful options, and he chose the one that was less inconvenient to him, with the full understanding that the police still needed to go get a warrant in order to search the computers. So the only thing... Minister Block, I had the same questions that Judge Barron did as I prepared for this case. We have dealt with this issue, U.S. v. Vasquez, 7-24, Fed Third, 15, U.S. v. Lee, 3-17, Fed Third, 26, and indeed going back to U.S. v. Miller in 1978, 5-89, Fed Second, 11-17. I don't believe either party cited to these cases a regrettable omission, but that's what my research showed. Your Honor, we did cite to the Miller decision, but we did not cite to Vasquez or Lee, and I do apologize for that. Is Miller this situation in your view, Mr. Block? No. Miller addresses the question of a defendant being put to hard choices between two lawful choices, and it notes that asking a defendant to choose isn't coercive. But was the choice there, stay out of your house for 24 hours or give us your computer? In other words, at some point, the question is, is any choice that you put them to that's lawful non-coercive? Maybe the answer is yes. Or are there some choices that you put them to that constitute coercion? Well, I think that clearly in this case, the choice was not coercive. And so rather than speculate as to whether there are circumstances in which it might be a coercive but lawful choice, I would say here you have a 46-year-old man who fully understands his right to refuse consent and has had a non-hostile conversation with law enforcement. And law enforcement has been very upfront with him about their options at that point, which all include going to a judge to seek warrants. I think in that circumstance, there's simply nothing in the record to suggest that it was involuntary and even less in the record to find that the was clear error. Counsel, didn't they, in fact, go get a warrant so they could search the computer once they got it? Yes, they did. And how long did that take? Wasn't that done that same afternoon? I am not sure, but the officer did state to Mr. Mummey that his choice was either to go see a house or the next day for a warrant for the computer. So I think, thank you. So we would ask the court to affirm the decision. Thank you. Thank you both. That concludes the argument in this case. Attorney Davis and Attorney Block, you should disconnect from the hearing at this time.